**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                                    **5:07-CR-410 (NAM)**

**v.**

**JONATHAN HARRISON,**

                    **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

Office of the Federal Public Defender            Melissa A. Tuohey,
Districts of Northern New York & Vermont         Assistant Federal Public Defender
The Clinton Exchange, 3rd Floor
4 Clinton Square
Syracuse, NY 13202
For Defendant

Glenn T. Suddaby                                 Ransom P. Reynolds, III
United States Attorney                           Assistant United States Attorney
Office of the United States Attorney
100 South Clinton Street
Syracuse, NY 13261-7198

**Hon. Norman A. Mordue, Chief United States District Judge**

**MEMORANDUM DECISION AND ORDER**

**I.        INTRODUCTION**

        Defendant Jonathan Harrison is charged in a one count indictment with knowingly and

intentionally possessing with intent to distribute more than fifty (50) grams of a mixture and

substance containing cocaine base (crack), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

Dkt. No. 1.  On December 14, 2007, defendant filed a motion pursuant Rule 12(b)(3)(C) of the

Federal Rules of Criminal Procedure to suppress physical evidence law enforcement obtained as a

result of an allegedly illegal seizure.  Dkt. No. 8.  The government opposed defendant's motion

and cross-moved for discovery pursuant to Rule 16(b)(1).  Dkt. No. 11.  In view of the affidavit

defendant submitted in support of the motion to suppress, the Court held an evidentiary hearing on March 5, 2008.  Following the hearing, at defense counsel's request, the Court permitted the parties to submit proposed findings of fact and conclusions of law.

Defendant contends that evidence that he possessed crack cocaine must be suppressed because law enforcement discovered it following a police detention that exceeded the bounds of a lawful vehicle and traffic stop.  The following, based upon the Court's observations at the hearing and consideration of the credible evidence presented, constitutes the Court's findings of fact and conclusions of law.

## II.    FINDINGS OF FACT[1]

On November 2, 2006, at approximately 10:35 p.m., New York State Police Trooper Joseph Krywalski executed a traffic stop on the New York State Thruway in the Town of Dewitt and pulled over a white Nissan Maxima because its license plate lamp was out.  Transcript of Suppression Hearing, p.5.  At the time, Trooper Krywalski was on the phone with Trooper Timothy Ryan, who was approximately two miles away.  T.18, 55.  Trooper Krywalski told Trooper Ryan that he was stopping a car and they hung up.  T.18.  Because the vehicle was "very close to the white line", Trooper Krywalski approached the passenger's side and asked the driver, Marcos Villegas, for his license and registration.  T.6.  Trooper Krywalski testified that he immediately recognized Villegas because they had met during two prior traffic stops.[2]  T.8, 13.

---

[1] Defendant submitted an affidavit in support of the motion to suppress, but did not testify at the hearing. The Court has not credited defendant's affidavit as it is inconsistent with Trooper Krywalski's and Trooper Ryan's straightforward testimony regarding the vehicle stop in question.

[2] During the first of the prior stops, Trooper Krywalski noticed that there was an "odor of marijuana in the vehicle" and that there were "a couple joints in the ashtray."  T.10.  Trooper Krywalski testified that he did not charge Villegas with unlawful possession of marijuana because Villegas told them that "he was in the process of getting hired by the Department of Corrections, so we cut him a break".  Id.  Following the second stop, law enforcement discovered cocaine underneath the passenger's seat and marijuana in Villegas's pocket and in the glove compartment.  T.12.  Ronisha McBride, who was one of the occupants in the vehicle during the traffic stop presently

Trooper Krywalski observed that there were four people in the vehicle.  T.6.  Ronisha McBride was in the front, passenger seat, and Lamar Watson and defendant Jonathan Harrison[3] were in the back seat of the vehicle.  Trooper Krywalski asked Villegas to step out of the vehicle "for safety reasons" and so he could "talk to him . . . check impairment and speak to him face-to face."  T.7. Trooper Krywalski further explained that when there is more than one person in a vehicle, it is his standard practice to ask the driver to step out of the vehicle to speak with him.  *Id.*

Trooper Krywalski met Villegas at the rear of the vehicle.  T.8.  Trooper Krywalski asked Villegas where everyone was going and where they were coming from.  T.13.  Trooper Krywalski testified that Villegas told him that "they were coming from Rochester and all four people in the vehicle went from Utica to Rochester for a wedding rehearsal" and that they were on their way back to Utica.  T.14.

Trooper Krywalski stated that "[i]n essence", at that point, he had all the information he needed to issue a ticket for an equipment violation.  T.36.  Trooper Krywalski, however, then "went up and . . . interviewed the front seat passenger and the people in the back seat, I asked where they were going, where they were coming from."  T.14.  According to Trooper Krywalski, they replied "that the two front seat passengers, McBride and Villegas, came from Utica to Rochester to visit friends, they then picked up the two back seat passengers, Harrison and Watson, and all four of them were driving back to Utica."  *Id*.  At this point, to ensure that McBride was not confused or had "just left out the fact that they went to a wedding rehearsal, I

---

at issue, was also in the vehicle.  *Id*.  At the time, Villegas was arrested and charged with criminal possession of a controlled substance and unlawful possession of marijuana.  *Id*.

[3]  In *Brendlin v. California*, the Supreme Court held that when a police officer makes a traffic stop, the passenger, like the driver, is seized within the meaning of the Fourth Amendment. - - U.S. - - , 127 S.Ct. 2400 (2007).  Thus, defendant, who was a passenger in the vehicle, and therefore a detainee, may challenge the constitutionality of the stop.  *Id*. at 2404.

asked if there was anything special going on in Rochester, she said no, we just went to go visit friends." T.16.

Because the occupants's story about their travels conflicted with Villegas's, Trooper Krywalski returned to the rear of the vehicle and "asked again where they were coming from to make sure that the stories were conflicting. He told me the same thing, that they . . . went to a wedding rehearsal." T.15. Trooper Krywalski then asked Villegas "for consent to search the vehicle due to conflicting stories." *Id*. Trooper Krywalski testified that Villegas "got very combative and he told me no." T.17.

Approximately two or three minutes after pulling the vehicle over, and while Trooper Krywalski was talking to Villegas for the second time, Trooper Ryan arrived. T.18. Trooper Ryan testified that he exited his vehicle, and approached Villegas's vehicle. T.55. Trooper Ryan "scanned the vehicle" with his flashlight, and "scanned the back seat, saw there was two occupants in the back seat and one occupant in the front." T.56, 57. Trooper Ryan started to talk to McBride on the passenger's side of the vehicle. T.57. Trooper Ryan stated that as he shined his flashlight into the vehicle, he "observed a marijuana joint, burnt marijuana cigarette on the floorboards next to [McBride's] foot."[4] T.58.

After observing the marijuana, Trooper Ryan:

> walked to the back of the vehicle, and . . . when Trooper Krywalski was done speaking with Mr. Villegas I asked what was going on with the stop and he stated that he had conflicting stories from several parties in the vehicle and that he had asked for consent to search the vehicle and he stated that it was denied and I said I observe[d] what I believed to be a marijuana cigarette at which point in time I told Trooper Krywalski to go up and confirm that.

---

[4] Trooper Krywalski did not specify in his police report or in his grand jury testimony that it was Trooper Ryan who first observed the marijuana cigarette. Although the report and prior testimony omits this fact, the Court does not find Trooper Krywalski's report and prior testimony to be inconsistent with his testimony at the hearing.

4

T.58.  Trooper Krywalski testified that it was five or six minutes after the initial stop of the vehicle when Trooper Ryan found the marijuana cigarette.  T.25.

Trooper Krywalski stated that he "walked up to the passenger's side to confirm it" and "saw the . . . burnt marijuana cigarette on the floor of the passenger's seat in between [McBride's] feet."  T.19.  Trooper Krywalski asked McBride to get out of the vehicle.  T.20.  Both Villegas and McBride were placed in handcuffs.  T.21.

Trooper Krywalski testified that he asked defendant and the fourth passenger out of the vehicle and then began to search the vehicle.  T.22.  Trooper Krywalski discovered a gun inside the center console and immediately signaled a third trooper who had arrived on the scene to handcuff Harrison and the fourth passenger.  T.23.  Trooper Krywalski continued to search the vehicle and recovered the marijuana cigarette, but no other contraband.  T.23-24.

Eventually, all four individuals were taken to the police station.  T.25.  Villegas received a ticket for "inadequate equipment."  T.27.  Trooper Krywalski testified that after arriving at the police station, defendant was placed in a room and handcuffed to either a bench or a post.  T.28 Trooper Krywalski stated that he "had stepped out of the room just over at the doorway, I had heard the clanking of the handcuffs and I peeked my head back in and I see [defendant] has his back to me shaking his right leg and a ball of crack fell out of his pant leg onto the floor."  T.28.

It is the crack that defendant seeks to suppress as fruit of an illegal detention.  *See e.g. United States v. Scopo*, 19 F.3d 777, 781 ("any evidence seized based upon an illegal stop 'is subject to the fruit of the poisonous tree doctrine' and may be suppressed.") (quoting *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993)).

## III.   CONCLUSIONS OF LAW

In evaluating whether an investigative stop is reasonable under the Fourth Amendment,

the reviewing court must determine both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). The "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).

In this case, the initial seizure of defendant, and the others in the vehicle, based on Trooper Krywalski's observation of a non-functioning license plate light, was lawful. *See Wren v. United States*, 517 U.S. 806, 809 (1996) ("as a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"). This does not end the inquiry, for "[i]t is nevertheless clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). An investigative detention must "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S.491, 500 (1983); *see also Caballes*, 543 U.S. at 407 ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). The burden is on the government "to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Accordingly the Court examines the sequence of events following the traffic stop.

Here, after stopping the vehicle, Trooper Krywalski approached the passenger side and asked Villegas, the driver, for his license and registration. The parties do not dispute the reasonableness of this action. Because the vehicle was parked close to the white line, and in order to speak with Villegas "face to face", Trooper Krywalski asked Villegas to step out of the vehicle.

The Supreme Court has held that "[r]ather than conversing while standing exposed to moving traffic, the officer prudently may prefer to ask the driver of the vehicle to step out of the car and off onto the shoulder of the road where the inquiry may be pursued with greater safety to both." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977).  Thus, any intrusion resulting from Trooper Krywalski's request that Villegas exit the vehicle was "*de minimis*".  *Id*.

Trooper Krywalski then asked Villegas where they were coming from and where they were going. Villegas said "they were coming from Rochester and all four people in the vehicle went from Utica to Rochester for a wedding rehearsal.  Now they were heading back to Utica." Trooper Krywalski testified that he had all the information necessary to issue a ticket at that point. Trooper Krywalski nevertheless returned to the passenger side of the vehicle to question the passengers about where they were coming from and where they were going.  Defendant argues that Trooper Krywalski's questioning of Villegas, McBride, and the occupants about their travels unreasonably extended the scope and duration the traffic stop.  The Court disagrees.

As an initial matter, Trooper Krywalski's statement that he had all the information necessary to issue a ticket does not render his continuation of the investigation unreasonable.  The subjective belief of the officer does not make the detention unreasonable, "as long as the circumstances, viewed objectively, justify that action."  *Whren*, 517 U.S. at 813 (quotation marks omitted).

Further, defendant's assertion that Trooper Krywalski's return to the vehicle to question the occupants about their travels unreasonably extended the scope and duration of the purpose of the stop, is without merit.  Trooper Krywalski immediately recognized Villegas because he had been personally involved in two prior traffic stops during both of which Villegas had been found with narcotics. *Cf. United States v. Oates*, 560 F.2d 45, 59-60 (2d Cir. 1977) ("a police officer's

knowledge of a person's reputation as a prominent narcotics trafficker can properly be considered, along with other factors, as an element justifying the officer's reasonable suspicion or his belief that probable cause exists").  Thus, upon receiving Villegas's statement that they had traveled that day for a wedding rehearsal, the Court cannot say it was unreasonable for Trooper Krywalski to return to the vehicle to attempt to corroborate Villegas's statement by asking the occupants about their travels.

In any event, in view of the probable cause to stop the vehicle for inadequate equipment, Trooper Krywalski was objectively justified in asking the driver and occupants questions as part of the investigation.  *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ("the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions."); *United States v. Sparks*, No. 03CR. 269, 2004 WL 307304, at *5 (S.D.N.Y. Feb. 19, 2004) (holding that during a traffic stop, inquiries "can include requesting a driver's license and registration, and destination and purpose of the trip" and "police may even undertake similar questioning of the passengers to corroborate the information given by the driver.") (citing *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003); *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002)).  Moreover, Trooper Krywalski's questions focused on the occupants' travels; a reasonable area of inquiry since they were all traveling in a vehicle on the New York State Thruway when Trooper Krywalski stopped the vehicle for an equipment violation.  Thus, the Court finds that Trooper Krywalski's limited inquiries of Villegas and the occupants regarding their travels were reasonably related to the purpose of the stop.

Under the totality of the circumstances in this case, once Trooper Krywalski, who, as discussed, recognized Villegas from two prior traffic stops during which narcotics were found,

received conflicting stories from Villegas and the occupants of the vehicle about their travels, he was justified in further detaining the vehicle and occupants and questioning Villegas again to determine whether their stories indeed conflicted. *See e.g. Sparks*, 2004 WL 307304 at *7 (finding under the totality of the circumstances, that the vehicle occupants' "vastly different responses" to law enforcement officer's inquiries about their travels contributed a "strong basis for reasonable suspicion to continue the detention of the car and its occupants."). Thus, Trooper Krywalski's additional questioning of Villegas did not unreasonably exceed the scope of the seizure.

After questioning Villegas about his travels for the second time, Trooper Krywalski asked if he could search the vehicle. Villegas said no. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine his identification and request consent to search his or her luggage as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 434-435 (1991) (internal citations omitted). Thus, Trooper Krywalski's simple request for consent to search was permissible. Based on the above, the Court therefore concludes that the investigative seizure was sufficiently limited in scope.

The Court likewise concludes that the duration of the seizure was sufficiently limited. Indeed, Trooper Krywalski acted diligently in pursuing the investigation in this case, and within five minutes: approached the vehicle; collected Villegas's license and registration; asked him to step out of the vehicle; briefly questioned him about their travels; returned to the vehicle to ask the same questions of the occupants; and re-questioned Villegas after receiving conflicting stories. *See United States v. Bowers*, 490 F.Supp.2d 285, 291-92 (D.Conn. 2007) (finding police officer's questioning of passenger in vehicle stopped for a traffic violation did not unjustifiably or

9

unnecessarily prolong the detention "beyond the time needed to deal with the failure to wear seatbelts because the duration of the detention was brief, "only several minutes" and although the question was different in scope "from the offense that caused him to stop the vehicle" was "nonetheless not intrusive and entirely reasonable").  Based on these facts, the Court finds that the duration of the stop, to this point, was sufficiently limited.  *Cf. United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("Obviously, if an investigative detention continues indefinitely, at some point it can no longer be justified as an investigative stop."); *United States v. Glover*, 957 F.2d 1004, 1011 (2d Cir. 1992) ("A critical factor in evaluating the intrusiveness of a stop is the length of the detention.").

It was sometime during Trooper Krywalski's second inquiry of Villegas that Trooper Ryan arrived, and, seeing that Trooper Krywalski was speaking with Villegas, approached the vehicle, shined his flashlight[5] into the vehicle, and observed the marijuana cigarette.[6]  As discussed above: the scope of the initial investigation was reasonably related to the justification for the traffic stop; Trooper Krywalski's continued detention of the vehicle and occupants, as well as his additional questioning of Villegas, were justified by his receipt of conflicting stories from the occupants about their travels; and the duration of the detention, less than five minutes, was sufficiently limited.  Thus, defendant was being lawfully detained when Trooper Ryan arrived and observed in plain view a marijuana cigarette inside the vehicle.  *See e.g. United States v. Fields*, 113 F.3d 313, 321 (2d Cir. 1997) ("police are free to observe whatever may be seen from

---

[5]  The parties do not take issue with Trooper Ryan's use of the flashlight.  In any event, "once a vehicle is lawfully stopped, a police officer's looking through the windows into the vehicle from outside, even when shining a flashlight to illuminate the inside of the vehicle, does not constitute a 'search' of the vehicle within the meaning of the Fourth Amendment."  *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000).

[6]  The parties do not contest the reasonableness of Trooper Ryan's actions upon arriving at the scene of the stop or challenge the constitutionality of the subsequent sequence of events which led to the discovery of the crack cocaine defendant seeks to suppress.

10

a place where they are entitled to be.") (citing *Florida v. Riley*, 488 U.S. 445, 449 (1989)).

Consequently, law enforcement's subsequent discovery of crack cocaine was not the product of

an unconstitutional seizure.  Accordingly, defendant's motion to suppress is denied.

**IV.    CROSS-MOTION FOR DISCOVERY**

The government has cross-moved for reciprocal discovery pursuant to Rule 16(b)(1).  The

government is entitled to such discovery pursuant to Rule 16(b)(1), and its motion is unopposed.

Accordingly, the government's motion for discovery is granted.

**V.    CONCLUSION**

For the foregoing reason, it is hereby

**ORDERED** that defendant's motion to suppress is **DENIED**; and it is further

**ORDERED** that the government's cross-motion for discovery is **GRANTED**.

**IT IS SO ORDERED.**

Date:  June 27, 2008

Norman A. Mordue
Chief United States District Court Judge